IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 11, 2017

**CARROLL CREWS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 14-CR-78        R. Lee Moore, Jr., Judge**

_____

**No. W2017-00578-CCA-R3-PC**

_____

The Petitioner, Carroll Crews, appeals from the denial of post-conviction relief by the Dyer County Circuit Court. In this appeal, she argues that she received ineffective assistance of counsel. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the Defendant-Appellant, Carroll Crews.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen W. Burns, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was originally convicted by a jury of selling dihydrocodeinone, a Class D felony, and was sentenced as a career offender to twelve years' incarceration to be served at sixty percent. This court affirmed her conviction and sentence on direct appeal. State v. Carroll Renee Crews, No. W2015-01683-CCA-R3-CD, 2016 WL 3216046, at *1–2 (Tenn. Crim. App. June 2, 2016). The following proof was adduced at trial:

> Officer Lynn Waller of the Dyersburg Police Department (DPD) testified
> that he was on patrol with another DPD officer, Charlie Cox, on September

28, 2013, when they drove by the H & S Market. As they were driving by, Officer Waller saw the [Petitioner] "lean[ing] into the window" of a red pickup truck and "talking to the driver of the pickup truck." Officer Waller drew Officer Cox's attention to the truck. Officer Waller testified that he saw what appeared to be a "hand to hand" drug transaction. Officer Cox testified that he "saw money being transferred" from the [Petitioner] "back and forth to the guy driving the truck."

Officers Waller and Cox pulled into the store's parking lot. As they did, the [Petitioner] quickly walked away from the red truck and back to her car. Officer Waller stopped the [Petitioner] as she got into her car and confronted her with what he had seen. The [Petitioner] denied selling pills to the driver of the pickup truck. The [Petitioner] told Officer Waller that the driver was a family member whom she was giving "some Xanax" to because a mutual relative had "just died." However, Officer Waller testified that the [Petitioner] was unable to tell him the name of the driver of the truck. Officer Waller found an empty "pill bottle" with the [Petitioner's] "name on it" when he searched her.

Officer Waller then spoke to the occupants of the red pickup truck. The driver was a man named Brandon Williams. The passenger was a man named Kenneth Connell. Officer Waller testified that Mr. Williams was "cooperative" and gave him "four [h]ydrocodone pills" from "[h]is pocket." (footnote omitted). Subsequent forensic testing by the Tennessee Bureau of Investigation confirmed that the pills were dihydrocodeinone. Officer Waller also found a twenty-dollar bill, two one-dollar bills, and eight quarters in "[t]he pocket" of the driver's side door of the pickup truck. Officer Waller testified that he found a small amount of marijuana on the persons of both Mr. Williams and Mr. Connell but that he let them "thr[o]w [it] out" rather than charge them for simple possession.

Mr. Williams testified that he was giving a ride to "a friend" when he stopped at the H & S Market to purchase some cigarettes. According to Mr. Williams, the [Petitioner] approached him in the parking lot of the store. Mr. Williams described the [Petitioner] as an "acquaintance" of his. Mr. Williams testified that the [Petitioner] asked him if he wanted to buy "some [h]ydros." The [Petitioner] offered the pills to Mr. Williams for four dollars per pill, sixteen dollars total. Mr. Williams claimed that he agreed to buy the pills because the [Petitioner] had "said she needed some money." Mr. Williams testified that he gave the [Petitioner] a twenty-dollar bill and that she was in the process of giving him his change, two one-dollar bills

and eight quarters, when Officers Waller and Cox pulled up. When the officers pulled up, the [Petitioner] dropped all of the money and tried "to get back to her car." Mr. Williams admitted that he had a small amount of marijuana on him that day. Mr. Williams testified that he was honest with Officer Waller and that he had testified truthfully about what had happened that day.

Mr. Williams admitted that he had prior convictions for driving under the influence, driving with a revoked license, and simple possession of marijuana. On cross-examination, Mr. Williams further admitted that he had a recent conviction for misdemeanor theft, a prior conviction for criminal impersonation for giving a police officer a false name, and a prior charge of filing a false report for reporting his car stolen after he had wrecked it. Mr. Williams also admitted on cross-examination that Officer Waller had told him that day that he could have been charged with simple possession and that the truck he was driving could have been seized. Mr. Williams admitted that he "was truthful with" Officer Waller because he did not want to be charged with simple possession.

Crews, 2016 WL 3216046, at *1–2.

At the October 31, 2016 post-conviction hearing, the Petitioner testified that she initially filed her petition pro se, which was later amended by counsel. She then stated that she advised trial counsel to call Charles and Barbara Upchurch, her employers at the time of the offense, as witnesses, and he did not. She claimed they were important to her case because she "was never out of their sight very much [at the time of the offense]." She said Mr. Upchurch could have testified that the Petitioner "didn't have no pills on [her] and [she] wasn't selling no pills and [she] wasn't meeting anybody there." She said Mr. Upchurch attended every court date and was present at trial. The Petitioner said that trial counsel did not call any witnesses on her behalf. The Petitioner further claimed that there was a video of store surveillance which would have shown that she was not selling drugs; that an unnamed clerk and unnamed "black guy" with Brandon Long would have been helpful to her case; and that a motion to suppress should have been filed.[1] The Petitioner also testified that the other pill bottles found in her possession should have been presented at trial. She reasoned, "why wouldn't you charge me with Xanaxes too?" A video from the trial showing parts of the offense was also introduced at the hearing. The Petitioner complains that "the video cuts off four different times" during her cross-examination and several inconsistencies were noted.

---

[1] The trial court noted that Brandon Williams and Brandon Long are the same person.

- 3 -

Trial counsel testified that he spoke with Mr. and Ms. Upchurch and determined that neither was present at the time of the offense. He recalled, however, that Mr. Upchurch advised him to "bribe certain individuals within the judicial system to make these charges go away." Trial counsel opined that their testimony may have been more relevant for sentencing purposes. In regard to the store clerk, trial counsel's investigator initially contacted her. However, trial counsel advised that "[b]y the time [he was] assigned the case," the clerk "really didn't remember anything" and advised him that "she didn't know why or for what reason or any of the people involved." Trial counsel said "there were no video cameras . . . no recordings to retrieve[.]" He could not recall whether it was taped over or did not exist. In regard to the person in the car with Mr. Williams, trial counsel said they searched for him but were unable to find him. He said that "Mr. Connell would've simply affirmed Mr. Williams' or [Mr.] Long's story."

Regarding the video the Petitioner wanted admitted at trial, trial counsel testified that he did not admit it as part of his trial strategy. He wanted the jury to believe that the drug transaction was between Brandon Williams and Kenneth Connell, and when the police became involved they "pointed the finger at [the Petitioner] because she was the closest person." He said playing the tape would have done more damage to the Petitioner's case because it would have made Williams a more credible witness. He acknowledged that there were certain statements on the videotape he wanted the jury to hear, including Mr. Williams asking the police officer, "Do you want me to say anything else?" and Investigator Waller telling Mr. Williams' mother, "We're not going to charge him today as long as he cooperates with us?" However, he could not introduce portions of the tape without the State introducing the entire tape. He did explore these comments on cross-examination.

Trial counsel testified on cross-examination that he objected to the State's introduction of the pill bottle on hearsay grounds. He explained that his objection was "hyper-technical" and based on the writing on the pill bottle. He further stated that he did not believe introducing the other pill bottles or the Petitioner's pharmacy records would have "shored up [his] simple possession [defense]." Finally, trial counsel said that he had two trial strategies: (1) not guilty based on the fact that this was a drug transaction between Williams and Connell for which they blamed the Petitioner; and (2) this was a case of simple possession because the Petitioner was giving Williams pills because someone in his family had died. He confirmed that he cross-examined Williams regarding his criminal history and his cooperation with the police. Trial counsel did not believe there was a legal basis or "tactical necessity" to file a motion to suppress.

Upon hearing the above proof, the post-conviction court determined that the Petitioner failed to demonstrate deficient performance or prejudice. The Petitioner later filed this timely appeal.

## ANALYSIS

The sole issue presented for our review is whether the post-conviction court erred in denying post-conviction relief based on trial counsel's failure to (1) call the Upchurches as witnesses at trial; (2) investigate a store clerk; (3) introduce into evidence at trial the other pill bottles recovered from the Petitioner and a video of the interaction between police and Williams.[2]  The State contends, and we agree, that the post-conviction court properly denied relief.

In reaching our conclusion, we are guided by the following well-established law pertaining to post-conviction relief.  Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right.  T.C.A. § 40–30–103.  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010).  A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence.  T.C.A. § 40–30–110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293–94 (Tenn. 2009).  Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it.  Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose,

---

[2] The Petitioner also alleged that trial counsel was ineffective based on his failure to file a motion to suppress.  However, this issue was not included in her brief in this appeal.  Therefore, it has been waived.

523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370 (citing Strickland, 466 U.S. at 697).

In denying relief, the post-conviction court reasoned, in pertinent part, as follows:

> [The Petitioner] alleges that the Upchurches should have been called and they would have added something that . . . she cannot tell us what they would have added, and her lawyer indicates that they had nothing to add that would help in her defense. And of course, their way of handling this was to bribe someone in the justice system. She did not recall whether or not she actually told him to call the Upchurches as witnesses. But sounds like, even if they had been potential witnesses, there was not anything that they could add to the defense.
>
> The clerk was interviewed, that she said should have been called, she didn't know her name - - she was interviewed by the public defender's investigator and by [trial counsel] also and had no information that would help one way or the other.
>
> The video itself, the Court has listened to the video. The video is the video of the - - I guess Officer Waller's interview with Brandon Williams, Brandon Long, one in the same person, who sets out very clearly that he bought hydrocodone from you, Ms. Crews, for the amount, and they got the change that he got back, the police department collected it at that time.

There was an African-American man who she - - and I suppose that's the one that's referred to as Connell, that no one seemed to be able to find at the time of the trial, but not - - was not because it was attempted, they didn't attempt to find him; but the information they had from him was not something that would have been helpful.

. . . .

Now, the next issue is the prescription bottle. The State introduced the prescription bottle that showed a prescription for hydrocodone, it was in her name, and the issue she raises in post-conviction today is that they should've introduced the other bottles dealing with the other drugs that were in her purse, and the Court cannot see how that would have helped her defense at all.

. . . .

In this situation, the Court felt like the defense attorney did develop a trial strategy, that he did all that he could do under the circumstances to properly defend her, and the proof was overwhelming, the jury did not believe the defense that was raised, and the Court does not find that the attorney's performance was deficient, nor does the Court find that there is any prejudice shown.

Upon our review, the evidence in the record does not preponderate against the judgment of the post-conviction court. The Upchurches were not presented as witnesses at the post-conviction hearing, see Black v. State, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990), and even if they had been, trial counsel testified that their testimony would not have been relevant. Trial counsel further testified that he interviewed the store clerk, and she did not remember anything about the offense. Trial counsel additionally explained that he did not introduce the video of Williams' interview with the police because it would have bolstered Williams' credibility, which was contrary to his trial strategy. This court does not second-guess a reasonably based trial strategy. See Atkins v. State, 911 S.W.2d 334, 347 (Tenn.1994). Finally, the Petitioner fails to explain, and we fail to see, how the introduction of the other prescription pill bottles would have been helpful to her case. Accordingly, the Petitioner has failed to establish deficient performance or prejudice arising therefrom. She is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE